IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| TOYO TIRE & RUBBER CO., LTD. | ) | Violation: |
| | ) | Count I: 15 U.S.C. § 1 |
| Defendant. | ) | Count II: 15 U.S.C. § 1 |
| | ) | |
| | ) | Filed: |

### INFORMATION

### COUNT ONE
### CONSPIRACY TO RESTRAIN TRADE
### (15 U.S.C. § 1)

The United States of America charges that:

I.

DEFENDANT AND CO-CONSPIRATORS

1. TOYO TIRE & RUBBER CO., LTD., is hereby made a Defendant on the charge contained in Count One.

2. TOYO TIRE & RUBBER CO., LTD. ("the Defendant") is a corporation organized and existing under the laws of Japan, with its principal place of business in Osaka, Japan, and subsidiaries in Franklin, Kentucky, and White, Georgia. During the period covered by Count One, the Defendant was engaged in the business of manufacturing and selling automotive anti-vibration rubber products to Toyota Motor Corporation, Nissan Motor Corporation, Fuji Heavy Industries, Ltd., and certain of their subsidiaries, affiliates, and suppliers (collectively, "automobile and component manufacturers") in the United States and elsewhere.

3. Other corporations and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance of it.

4. Whenever in this Count reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

II.

BACKGROUND

5. During the period covered by this Count, the Defendant and its co-conspirators supplied automotive anti-vibration rubber products to automobile and component manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere. During the period covered by this Count, the Defendant and its co-conspirators manufactured automotive anti-vibration rubber products: (a) in the United States for installation in vehicles manufactured and sold in the United States; (b) in the United States for installation in vehicles manufactured in Canada for export to and sale in the United States; and (c) in Japan for installation in vehicles manufactured in Japan for export to and sale in the United States.

6. Automotive anti-vibration rubber products are comprised primarily of rubber and metal, and are installed in suspension systems and engine mounts, as well as other parts of an automobile, to reduce engine and road vibration. Automotive anti-vibration rubber products are typically custom-designed to fit specific automobiles, and are developed over a year in advance of an automobile model entering the market. Before ordering automotive anti-vibration rubber products for a new automobile model, automobile manufacturers typically requested pricing

from suppliers, through requests for quotation ("RFQs"). In response to the RFQs, the suppliers submitted price quotes, or bids, to the automobile manufacturer. When a supplier received part orders for a particular automobile model, it typically supplied the parts for the duration of that model, which is usually four to six years.

### III.

### DESCRIPTION OF THE OFFENSE

7. Beginning at least as early as March 1996 and continuing until as late as May 2012, the exact dates being unknown to the United States, the Defendant and co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of automotive anti-vibration rubber products sold to automobile and component manufacturers in the United States and elsewhere. The combination and conspiracy engaged in by the Defendant and co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

8. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendant and its co-conspirators, the substantial terms of which were to rig bids for, and to fix, raise, and maintain the prices of, automotive anti-vibration rubber products sold in the United States and elsewhere.

### IV.

### MEANS AND METHODS OF THE CONSPIRACY

9. For the purpose of forming and carrying out the charged combination and conspiracy, the Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

(a) participating in meetings, conversations, and other communications to discuss the bids, price quotations, and price adjustments to be submitted to automobile and component manufacturers in the United States and elsewhere;

(b) agreeing, during those meetings, conversations, and communications, to allocate among the companies certain sales of certain automotive anti-vibration rubber products sold to automobile and component manufacturers in the United States and elsewhere;

(c) agreeing, during those meetings, conversations, and communications, on bids, price quotations, and price adjustments to be submitted to automobile and component manufacturers in the United States and elsewhere;

(d) exchanging information on bids, price quotations, and price adjustments to be submitted to automobile and component manufacturers in the United States and elsewhere, in order to effectuate the agreements;

(e) submitting bids, price quotations, and price adjustments to automobile and component manufacturers in the United States and elsewhere in accordance with the agreements;

(f) selling automotive anti-vibration rubber products to automobile and component manufacturers in the United States and elsewhere at collusive and noncompetitive prices; and

(g) accepting payment for automotive anti-vibration rubber products sold to automobile and component manufacturers in the United States and elsewhere at collusive and noncompetitive prices.

V.

## TRADE AND COMMERCE

10. During the period covered by Count One, the Defendant and its co-conspirators sold to automobile and component manufacturers in the United States and elsewhere substantial quantities of automotive anti-vibration rubber products in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial quantities of equipment and supplies necessary to produce and distribute such automotive anti-vibration rubber products, as well as substantial payments for such parts, traveled in interstate and foreign trade and commerce.

11. During the period covered by Count One, the business activities of the Defendant and its co-conspirators in connection with the production and sale of automotive anti-vibration rubber products that are the subject of this Count were within the flow of, and substantially affected, interstate and foreign trade and commerce.

VI.

## JURISDICTION AND VENUE

12. The combination and conspiracy charged in Count One was carried out in the Northern District of Ohio and elsewhere within the five years preceding the date of this Count.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

## COUNT TWO
## CONSPIRACY TO RESTRAIN TRADE
## (15 U.S.C. § 1)

The United States of America charges that:

### I.

### DEFENDANT AND CO-CONSPIRATORS

13. TOYO TIRE & RUBBER CO., LTD., is hereby made a Defendant on the charge contained in Count Two.

14. TOYO TIRE & RUBBER CO., LTD. ("the Defendant") is a corporation organized and existing under the laws of Japan, with its principal place of business in Osaka, Japan, and subsidiaries in Franklin, Kentucky, and White, Georgia. During the period covered by Count Two, the Defendant was engaged in the business of manufacturing and selling automotive constant-velocity-joint boot products to GKN plc and its subsidiaries (collectively, "GKN") in the United States and elsewhere

15. Another corporation and other individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance of it.

16. Whenever in this Count reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

6

## II.

## BACKGROUND

17. During the period covered by this Count, the Defendant and its co-conspirators supplied automotive constant-velocity-joint boot products to GKN for installation in vehicles manufactured and sold in the United States and elsewhere.

18. Automotive constant-velocity-joint boot products are composed of rubber or plastic, and are used to cover the constant-velocity-joints of an automobile to protect the joints from contaminants. Automotive constant-velocity-joint boot products are installed by "tier-one" suppliers such as GKN onto constant-velocity-joint systems and then supplied to automakers. Before ordering automotive constant-velocity-joint boot products, GKN typically entered into Long Term Agreements ("LTAs") with and/or issued requests for quotation ("RFQs") to its suppliers. In response to the RFQs, the suppliers submitted price quotes, or bids, to GKN.

## III.

## DESCRIPTION OF THE OFFENSE

19. Beginning at least as early as January 2006 and continuing until as late as September 2010, the exact dates being unknown to the United States, the Defendant and co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by agreeing to allocate sales of, and to fix, raise, and maintain the prices of, automotive constant-velocity-joint boot products sold in the United States and elsewhere. The combination and conspiracy engaged in by the Defendant and co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

20. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendant and its co-conspirators, the substantial terms of which were to allocate the supply of, and to fix, raise, and maintain the prices of, automotive constant-velocity-joint boot products sold in the United States and elsewhere.

IV.

MEANS AND METHODS OF THE CONSPIRACY

21. For the purpose of forming and carrying out the charged combination and conspiracy, the Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

(a) participating in meetings and engaging in discussions in Japan concerning prices for automotive constant-velocity-joint boot products sold to GKN in the United States and elsewhere;

(b) agreeing during those meetings and discussions to allocate among the companies the supply of certain automotive constant-velocity-joint boot products sold to GKN in the United States and elsewhere;

(c) agreeing, during those meetings, conversations, and communications, on prices to be submitted to GKN in the United States and elsewhere;

(d) discussing and exchanging prices for certain automotive constant-velocity-joint boot products sold to GKN in the United States and elsewhere;

(e) submitting bids and price quotations to GKN in the United States and elsewhere in accordance with the agreements;

(f) selling automotive automotive constant-velocity-joint boot products to GKN in the United States and elsewhere at collusive and noncompetitive prices; and

(g) accepting payment for automotive constant-velocity-joint boot products sold to GKN in the United States and elsewhere at collusive and noncompetitive prices.

V.

TRADE AND COMMERCE

22. During the period covered by Count Two, the Defendant and its co-conspirators sold to GKN in the United States and elsewhere substantial quantities of automotive constant-velocity-joint boot products in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial quantities of equipment and supplies necessary to produce and distribute such automotive constant-velocity-joint boot products, as well as substantial payments for such parts, traveled in interstate and foreign trade and commerce.

23. During the period covered by Count Two, the business activities of the Defendant and its co-conspirators in connection with the production and sale of automotive constant-velocity-joint boot products that are the subject of this Count were within the flow of, and substantially affected, interstate and foreign trade and commerce.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

_____
RENATA HESSE
Acting Assistant Attorney General

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

_____
FRANK J. VONDRAK
Chief, Chicago Office

_____
L. HEIDI MANSCHRECK, NY Bar No. 4537585
ROBERT M. JACOBS, IL Bar No. 6289819
CHRISTINE M. O'NEILL, IL Bar No. 6300456
Trial Attorneys
U.S. Department of Justice
Antitrust Division
Chicago Office
209 S. LaSalle St., Suite 600
Chicago, IL 60604
Tel.: (312) 353-7530